General Accident Fire and Life Assurance Corporation, Ltd., a Corporation, and Libby Furniture and Appliance Company, Inc., a Corporation, Plaintiffs-Appellants, v. Ray Brown and Bernard Friedman, d/b/a Brown Brothers Cartage Company, Employers Mutual Casualty Company, a Corporation, and Thomas Blakesley, Defendants, Employers Mutual Casualty Company, a Corporation, Defendant-Appellee.

Gen. No. 48,434.

First District, First Division.

March 12, 1962.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, Karl M. Tippet and John L. Kirkland, of counsel), for appellants.

Albert M. Howard, of Chicago (Charles D. Snewind, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

General Accident Fire and Life Assurance Corporation and Libby Furniture and Appliance Company, its assured, filed this declaratory judgment suit to obtain coverage under a comprehensive general automobile insurance policy issued by Employers Mutual Casualty Company to Brown Brothers Cartage Company. The cause was heard on the complaint, amended answer and amendment thereto, a stipulation of facts and the testimony of two witnesses. Plaintiffs have appealed from an adverse judgment in the Superior Court.

The essential facts are not in dispute. Plaintiff Libby Furniture and Appliance Company contracted, on December 17, 1953, with defendant Brown Brothers Cartage Company for the delivery and hauling of Libby's merchandise. The written agreement provided that Brown Brothers would supply eight trucks and two tractors and trailers for Libby's exclusive use. On December 30, 1955, in pursuance of this agreement, Thomas Blakesley and Walter P. Dykes, two of Brown Brothers' employees, drove one of their company trucks up to the Libby loading dock to pick up merchandise for delivery to Libby customers. They followed the customary procedure of obtaining from Libby's shipping department a sheet indicating the particular merchandise to be loaded, the bin and dock where it had been placed by Libby's employees, and the customers' names and addresses. The two men proceeded to load the truck and while Blakesley was carrying two lamps "and was stepping from the loading dock to the truck" he fell and injured his right leg. Blakesley filed suit against Libby claiming that his in-

45

juries were the direct result of Libby's defective, hazardous and negligently maintained dock. He demanded $75,000 in damages.

Brown Brothers was insured at the time of the accident under a "Comprehensive-General-Automobile Liability" policy issued by Employers, who paid Blakesley's claim for workman's compensation. Libby was insured for the accident in question under a "Combined Comprehensive Liability" policy issued to it by General Accident. This policy subrogates General Accident to all rights of Libby, provides that where there is other insurance covering the loss the policies shall apply pro rata, and contains a clause withholding coverage on any non-owned automobile, such as the Brown Brothers' truck involved here, until the coverage of any policy issued directly upon such vehicle has been exhausted.

General Accident by letter requested of Employers that the latter assume the defense of the Blakesley suit on grounds that the injury was "a result of the loading and unloading operation" of Brown Brothers' vehicle and thus was covered under the Omnibus clause of Employers' automobile policy. When Employers refused the request, General Accident and Libby filed the instant suit naming Employers, Brown Brothers and Blakesley as defendants. The complaint was dismissed as to Brown Brothers and Blakesley. As Libby's position in the Blakesley suit will be unaffected by the result in the instant cause, this matter boils down to a dispute between the two insurance companies. The trial court found in favor of defendant, declaring that Employers is not obligated under its automobile policy to Brown Brothers to defend or pay any judgment rendered against Libby in the Blakesley suit.

The issue before us is purely one of law. Plaintiffs contend that Libby is entitled to coverage as an additional insured under the Omnibus clause of Employers' policy. Defendant urges the contrary view upon the theory that Libby at the time of the occurrence was neither "using" nor "loading" Brown Brothers' truck within the meaning of the policy.

The pertinent provisions of Employers' policy here under consideration read as follows:

## Insuring Agreements

1. Coverage A—Bodily Injury Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

## Receipts Basis—Truckmen

It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Medical Payments applies with respect to all owned automobiles and hired automobiles, and the use, in the business of the named insured, of non-owned automobiles, subject to the following provisions:

1. Definition of Insured. As respects such insurance, Insuring Agreement III, Definition of Insured, is replaced by the following:

The unqualified word "insured" includes the named insured and also includes any per-

son while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, . . .

Conditions

. . .

3. Definitions . . .

(e) Purposes of Use. . . . Use of an automobile includes the loading and unloading thereof.

■ It is our view that, because of the contractual relationship between Libby and Brown Brothers, the former must be considered to have been "using" the latter's truck at the time of the occurrence. The written agreement provided for Libby's "exclusive use" of delivery equipment as above referred to, and it is not disputed that Dykes and Blakesley were engaged in performance of the contract when the accident took place. We find further that the truck was being "used" within the meaning of Employers' policy at the critical moment in question in the sense that it was being "loaded." The undisputed facts reveal that Blakesley was carrying two lamps to the truck when he fell and was injured. In denying Libby's use of the truck counsel for the defendant emphasizes the fact that Libby employees were not in any way involved in the loading operation. The basis for our conclusion to the contrary, however, renders this circumstance immaterial. Libby was, under the contract, using the truck in the same sense as Brown Brothers, namely, loading it.

■■ But Libby's use of the truck, as manifested by the loading operation, is not sufficient to invoke for

48

Libby's benefit the coverage of Employers' automobile policy. There must be, as contended by defendant, a causal connection between the use of the truck and the injury. Although a number of the cases similar to ours do not contain a discussion of this essential factor, the ones involving a close question of causation point out that the loading and unloading clause, being merely an extension of the "use" of the vehicle which is covered by the policy, does not invoke the coverage of the policy unless there is the same degree of causal connection between the loading or unloading and the accident as would be required between the actual driving or use of the vehicle itself and a resulting accident. (Pacific Automobile Ins. Co. v. Commercial Cas. Ins. Co., 161 P2d 423, 427; Maryland Cas. Co. v. United Corp. of Massachusetts, 35 F Supp 570, 572; Ann, 160 ALR 1259, 1272). Thus, unless we can determine that the loading of the truck was the efficient and predominating cause of Blakesley's injury, the matter will not come within the terms of Employers' automobile policy.

On the record before us we cannot say that Blakesley's injury was caused by the loading of the truck. In his suit Blakesley alleged that his injury was caused solely by Libby's defective dock and their negligence in failing to maintain it. Libby owned and controlled the dock and clearly had sole responsibility for its maintenance. There were no allegations to the effect that Blakesley's carrying of merchandise in any way contributed to his fall, nor that any merchandise or anything connected with the loading operation or the truck itself in any way caused his injury. We are satisfied that the accident was not the result of the loading or use of the truck, but rather was caused directly by some independent factor or intervening cause wholly disassociated with and remote from the use of the truck. The coverage provided under the

loading and unloading clause of Employers' policy could not have been intended to apply to such a situation.

■ Assuming arguendo that Blakesley's injury could be said to have been caused by the loading of the truck, it is clear to us that the protection afforded by Employers still would not be invoked here. We agree with defendant that the employee exclusionary clause in the automobile policy is applicable and precludes liability on the part of Employers. The clause in question provides:

> This policy does not apply:
>
> . . .
>
> (c) under coverage A, to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law, or, except with respect to liability assumed under contract covered by this policy, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured, other than a domestic employee whose injury arises out of an automobile covered by this policy and for whose injury benefits are not payable or required to be provided under any workmen's compensation law;

It has not heretofore been decided in this state whether the above-quoted provision operates to exclude an *additional insured* from protection under the policy against an injury suffered by an employee of the *named insured*. In Michigan Mut. Liability Co. v. Continental Cas. Co., 297 F2d 208, the US Court of Appeals for the Seventh Circuit very recently held, in the absence of controlling Illinois authority, that an exclusionary clause comparable to the instant one ap-

plies to an additional insured with respect to an injury to an employee of the named insured. We agree with that court that the better reasoned authorities support that view. (See Kelly v. State Automobile Ins. Ass'n, 288 F2d 734; Travelers Ins. Co. v. Ohio Farmers Indemnity Co., 157 F Supp 54; American Fidelity and Cas. Co. v. St. Paul-Mercury Indemnity Co., 248 F2d 509; Transport Ins. Co. v. Standard Oil Co. of Texas, 161 Tex 93, 337 SW2d 284; Michigan Mut. Liability Co. v. Carroll, 271 Ala 404, 123 So2d 920; Simpson v. American Automobile Ins. Co. (Mo App), 327 SW2d 519.)

■ Our function in interpreting the exclusionary clause before us is to effectuate the intention of the parties as evidenced by the words employed in the contract. (Lentin v. Continental Assur. Co., 412 Ill 158, 105 NE2d 735.) In so doing we must construe the policy as a whole. (Scapes v. Orr, 2 Ill App2d 363, 119 NE2d 479.) The exclusinoary clause does not attempt to say who is an "insured" within its scope. Elsewhere in the policy, however, the "unqualified word 'insured'" is defined to include both the named insured and all those qualifying as additional insureds. There is nothing whatsoever in the policy to suggest that this definition is not intended to apply to the use of the word "insured" in the exclusionary clause. We think it clear that such definition was meant to apply. Had there been any intention to confine the term "insured" in the exclusionary clause to the "named insured," the latter phrase certainly would have been used, just as it was used elsewhere in the policy, when intended. The observation of the court in Simpson v. American Automobile Ins. Co. (Mo App), 327 SW2d 519, 531, is appropriate here:

> The additional insureds cannot claim coverage under the omnibus clause, which gives them coverage as additional insureds through definition of

51

insureds, and then seek to ignore that very definition that gives them coverage, when considering the exclusion clause.

■ The Simpson opinion points out an additional factor which fortifies our view of the intention embodied in this clause. The exclusionary provision is primarily concerned with hazards to which the policy does not apply, and thus should be interpreted in terms of the *injuries* to be excluded rather than in terms of the *persons* who are to be indemnified.

■ Plaintiffs assert the severability of interests doctrine, arguing that Libby should be treated as though it had a separate policy with Employers and thus should be unaffected by the exclusionary clause. The policy in question, however, does not contain such a severability of interests clause. Moreover, courts faced with the question of the effect of such a clause have held that it does not change the meaning of the exclusionary clause. (Transport Ins. Co. v. Standard Oil Co. of Texas, 161 Tex 93, 337 SW2d 284; Kelly v. State Automobile Ins. Ass'n, 288 F2d 734.)

We must enforce the policy as written, and it is our opinion that the word "insured" in the employee exclusionary clause of Employers' policy plainly means "anyone who is insured under the policy."

The judgment of the Superior Court, therefore, is affirmed.

Affirmed.

MURPHY, P. J., concurs.

MR. JUSTICE ENGLISH specially concurring:

If Libby were to be considered as *using* the Brown Brothers' truck at the time of the injury, then the points concerning proximate cause and the exclusionary clause of the policy would become matters for de-

cision, and I would agree with the conclusions reached in this court's opinion. I would not reach those questions, however, because it is my opinion that Libby was not *using* the truck within a proper construction of the policy.

Brown Brothers, as contract carriers, entered into a written agreement with Libby to supply certain equipment for the delivery of Libby's merchandise. While this contract states that these trucks were to be for the "exclusive use" of Libby, it also provides that the equipment was to be in the custody of, and maintained solely by, Brown Brothers; that the trucks were to be loaded, operated and unloaded solely by employees of Brown Brothers. There is nothing to indicate that Libby had any authority to control the operations of Brown Brothers under the contract other than to direct what hauling or deliveries were to be performed. All salaries, expenses, licenses and taxes of the truck operations were to be paid by Brown Brothers.

Considering the facts in evidence and what I think is the proper construction of the contract, taken as a whole, I am led to the conclusion that Libby was not *using* the trucks, within the meaning of the policy.

The extension of the definition of the word "use" to include loading and unloading, does not alter the situation, in my opinion. Certainly the truck was being loaded, but no employee of Libby (not even a supervisory employee) was engaged in the loading operation in progress at the time of the injury. In this respect the cases cited by plaintiff are distinguishable. (Woodrich Const. Co. v. Indemnity Ins. Co., 89 NW2d 412 (Minn); Wagman v. American Fidelity and Cas. Co., 304 NY 490; Bituminous Cas. Co. v. American Fidelity & Cas. Co., 22 Ill App2d 26, 159 NE2d 21.)