[No. D004418. Fourth Dist., Div. One. June 4, 1987.]

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURG, PENNSYLVANIA, Plaintiff and Appellant, v.
SUSAN MILLER, as Personal Representative, etc., et al., Defendants
and Respondents.

**COUNSEL**

Kern & Wooley, Ralph S. LaMontagne, Jr., and Elizabeth Kelleher for Plaintiff and Appellant.

Charles M. Finkel and Ned Good for Defendants and Respondents.

**OPINION**

**BUTLER, J.**—An insurance policy insured the owner of an airplane for liability for death of passengers. A policy endorsement stated the insurance would be effective only when the airplane was operated by a pilot holding a current medical certificate. The airplane crashed while flown by a pilot with an expired medical certificate, killing him and his two passengers. The pilot's physical condition did not cause the crash. The carrier denied coverage for wrongful death. The passengers' heirs contended the expired medical certificate had no causal connection to the accident and their damages were covered by the policy. We shall hold the lack of causal connection does not negate the current medical certificate requirement and the policy excluded liability for the passengers' deaths, and reverse the judgment.

I

National Union Fire Insurance Company of Pittsburg, Pennsylvania (National) issued on June 29, 1981, an insurance policy insuring Sterling Meyer for liability for death of passengers carried in his Cessna 310 R airplane. A pilot warranty was attached to the policy as an indorsement. The warranty included this paragraph: "1. Insurance will be effective only when the operation of the insured aircraft in motion is by a pilot designated below who posses[es] a current and valid pilot certificate of the kind specified with appropriate ratings, and a current medical certificate; all as required by the Federal Aviation Administration for the flight involved and who meets the additional qualifications set forth below." Ronald F. Miller and Meyer were specifically designated as pilots on the warranty.

On October 28, 1981, passengers Lawrence R. Saenz and Carl Stanley Gilbert boarded the Cessna at Calexico, California, bound for John Wayne Airport at Santa Ana. Miller was the pilot. He held a current and valid pilot certification but his medical certificate had expired and was not current. While on approach, the airplane crashed into a mountain, killing Miller and his passengers. Miller's medical condition did not cause the crash, which was occasioned by pilot error.

Saenz's widow Alice for herself and as guardian for their two children, and Gilbert's surviving son David (collectively the heirs) sued Susan Miller as representative of Miller's estate, Meyer,[1] and others for wrongful death damages. National then filed its complaint for declaratory relief contending Miller's failure to possess a current medical certificate at the time of the crash as required under the pilot warranty indorsement prevented coverage under the policy becoming effective.

Responding to requests for admissions, National admitted the policy "was in full force and effect on October 28, 1981," the date of the crash. Motions for summary judgment and for adjudication of issues were made, denied and granted in part. On the trial date, the parties stipulated to facts and submitted the case to the court on the stipulation and their memoranda of law. The court concluded National's admission the policy was in full force and effect the day of the accident waived its contention a current medical certificate as to Miller was required to cause the coverage to be effective. The court then decided Miller's failure to possess a current medical certificate had "nothing to do with the accident" and absence of the certificate did not toll the policy's effectiveness. The court gave judgment for the heirs of the passengers declaring the policy covered their claims. National appeals. We reverse.

## II

■ The heirs contend National's admission the policy was in full force and effect the day of the accident ended the coverage ball game. The trial court agreed. We don't. In *Irwin* v. *Pacific Southwest Airlines* (1982) 133 Cal.App.3d 709, 714 [184 Cal.Rptr. 228], we said an admission is not binding if made improvidently or unguardedly or is ambiguous in any way. There, a motion for summary judgment was granted on the issue of liability on res ipsa loquitur grounds. Following a separate trial resulting in an award of damages, the airline appealed, claiming error in the grant of summary judgment on liability. We rejected plaintiffs' contention the airline was precluded from appealing the liability issue because its counsel at the

---

[1] Meyer's estate has since been substituted as a defendant.

trial on damages admitted liability in his opening statement. "In context, the admission here lacks the gravity of a complete relinquishment of rights on the issue of liability, particularly in light of the inappropriateness of a denial of liability at a trial for damages and PSA counsel's refusal to abandon the appeal. PSA is thus entitled to appeal the summary judgment granted in the liability trial." (*Id.* at p. 714.) Here, in the same set of requests, National denied a number of requests for admissions to the effect the policy did not afford coverage for death of the passengers. The heirs' later motions for summary adjudication of issues were denied on the basis the expiration of Miller's medical certificate and the state of his health presented triable issues of fact and National's motion for summary judgment was denied on the ground the lack of a current medical certificate was not the cause of the crash. When the cause was submitted to the trial court on stipulated facts, National and the heirs signed a further stipulation containing National's waiver of coverage defenses under the policy "with the exception of those relating to the failure of the pilot to have in his possession a current medical certificate at the time of the accident."

National's admission the policy was in full force and effect did not constitute a waiver of the policy requirement Miller possess a current medical certificate and National is not estopped from asserting the lack of a current certificate prevented the policy from becoming effective. The admission "lacks the gravity of a complete relinquishment of rights on the issue of liability." (*Irving* v. *Pacific Southwest Airlines, supra,* 133 Cal.App.3d at p. 714.) National reserved its right to assert noncoverage by reason of lack of the current medical certificate. National's admission was simply to the effect the policy was issued, premiums were paid and the contract for insurance had not been terminated.

### III

National contends Miller's failure to possess a current medical certificate at the time of the crash compels the conclusion the policy did not afford coverage because the pilot warranty endorsement provided "Insurance will be effective only when [the aircraft is operated] by a pilot ... who posses[ses] ... a current medical certificate ...."

National argues in the same vein coverage is expressly excluded under part 2 of page two of the policy headed in large print, "EXCLUSIONS," which provides, "This policy does not apply [¶] ... 2. To any insured while the aircraft is in flight [¶] (a) if piloted by other than the pilot or pilots designated in the Declarations ...." The declarations state the aircraft will be piloted only by those named in the pilot warranty endorsement which lists Miller. National reasons Miller's failure to possess

a current medical certificate means he cannot be a designated pilot and the coverage for the crash is thus expressly excluded under the exclusion part of the policy.

We address this paragraph 2(a) exclusion contention first. Assuming the policy does not apply to any insured if the aircraft is piloted by someone other than those designated, i.e., Miller and Meyer, it does not follow that Miller's failure to possess a current medical certificate ipso facto eliminates him as a designated pilot. Exclusions are narrowly construed and uncertainties resolved in favor of the insured. (*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 464-466 [113 Cal.Rptr. 711, 521 P.2d 1103].) The pilot warranty endorsement purports to cause the insurance to be effective only when the aircraft is piloted by a person possessing a pilot certificate and a current medical certificate. Clearly, Miller was designated as a pilot and continued to be so designated even though he lacked a current medical certificate. National's argument coverage is excluded because the aircraft was operated by a person not designated in the declarations is meritless. We now address National's contention the insurance was not effective because Miller did not possess a current medical certificate.

### IV

*Middlesex Mutual Ins. Co.* v. *Bright* (1980) 106 Cal.App.3d 282 [165 Cal.Rptr. 45], considered an aircraft insurance policy insuring an airplane which struck an electrical transmission tower on its approach to an unlit airfield and crashed, killing the pilot-owner and two passengers. Some 541 kilos of burning marijuana was in the wreckage. A loaded revolver was found at the crash site. Other evidence supported the flight originated in Mexico. The power company sued the pilot-owner's estate for damages to the tower and the insurance carrier sought declaratory relief. The policy included this language: " 'This policy does not apply ... to any Insured ... who operates or permits the aircraft to be operated for any unlawful purpose ....' " (*Id*. at p. 286.) The trial court found the aircraft was used for an unlawful purpose, concluded the policy did not cover the loss arising out of the crash and entered judgment for the carrier. On appeal, the court held the exclusion of coverage when the airplane was used for unlawful purposes was valid. The estate there unsuccessfully argued the exclusion was not applicable because the unlawful use was not a cause of the injury.

"As noted above, Insurance Code section 11584 authorizes policy limitations on the use of the aircraft. In view of the liability assumed by Middlesex under its contract with the insured, it was reasonable to provide for a suspension of coverage when the aircraft is used for illegal purposes. The insurer is otherwise made an unwilling insurer of unlawful activities.

"We conclude that exclusion 4(c) herein had the effect of limiting liability under the policy by excluding from coverage the risks and hazards encountered by insured while operating or permitting the operation of the aircraft for illegal purposes. It was unnecessary to show a causal relationship between the illegal use and the loss." *(Middlesex Mutual Ins. Co.* v. *Bright, supra,* 106 Cal.App.3d 282 at pp. 290-291.)

The language in *Middlesex*—"This policy does not apply"—is to the same effect as the language in the pilot warranty endorsement here—"Insurance will be effective only ...." The heirs do not contend this phrase does not act to bar coverage and they do not argue the phrase is hidden or concealed such as to require we give it no effect *(Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168]). █ They contend there must be a causal connection between the expired medical certification and the crash to deny coverage "to claimants who are innocent heirs of non-pilot passengers." Conceding California cases reject the need for a causal connection between an exclusion and an incident triggering loss trigger the exclusion to bar the claim, the heirs suggest stare decisis is not controlling and urge we flexibly adapt the law to public policy needs. The heirs state "[a]nything which has a tendency to injure the public welfare is in principle against public policy." The denial of coverage based on a breach of policy language without any causal relationship between the breach and the incident thus violates this public policy. The heirs do not cite any authority to support this syllogism.

█ An insurance policy is a contract to be construed to effect the intention of the parties. *(Roug* v. *Ohio Security Ins. Co.* (1986) 182 Cal.App.3d 1030, 1035 [227 Cal.Rptr. 751]; *Healy Tibbitts Constr. Co.* v. *Employers' Surplus Lines Ins. Co.* (1977) 72 Cal.App.3d 741, 748 [140 Cal.Rptr. 375, 97 A.L.R.3d 1258].) The best evidence of that intent is the policy itself. *(Fireman's Fund Ins. Co.* v. *Fibreboard Corp.* (1986) 182 Cal.App.3d 462, 466 [227 Cal.Rptr. 203].) █ An insurance company has the right to limit the coverage of a policy issued by it. The plain language of the limitation must be respected. *(National Ins. Underwriters* v. *Carter* (1976) 17 Cal.3d 380, 386 [131 Cal.Rptr. 42, 551 P.2d 362].) █ While it is true courts must attempt to ascertain the insured's reasonable expectation as to coverage *(Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263), we are unable to say on this record Meyer reasonably entertained an expectation the policy included coverage for the heirs' decedents when the limiting language is clear, unequivocal and not attacked by the heirs.

The public policy argument necessarily fails for several reasons. The courts have consistently held insurance policies are contracts and the terms of the policy are construed to effectuate the intent of the parties. The intent

to exclude coverage if the pilot lacks a current medical certificate clearly appears in the pilot warranty endorsement in unequivocal language. The heirs do not specify the public policy violated by the exclusion other than the resultant bar to their claim for damages.

*Middlesex* and its cited cases state the law as we see it, i.e., there need be no causal relationship between an excluded circumstance and the incident which gives rise to a claim under the policy. National and Meyer agreed the policy would not be effective if the pilot's medical certificate was not current. The heirs cite cases dealing with causal relationship between a policy exclusion and an incident to support their contention lack of causal relationship does not bar coverage. None are on point. (*Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 31-32 [27 Cal.Rptr. 689, 377 P.2d 889] [in a concurrence of causes, the efficient cause, the one which sets the others in motion, is the cause to which the loss is to be attributed]; *Premier Ins. Co.* v. *Welch* (1983) 140 Cal.App.3d 720, 725 [189 Cal.Rptr. 657] [negligently maintained subdivision, a covered risk, caused a landslide to which heavy rains contributed]; *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123] [a homeowner's policy excluded liability for injuries arising out of use of a car—a passenger in the car was wounded when the insured accidentally shot her—the use of the car and the discharge of the weapon were independent concurrent causes of the shooting and both policies responded]; *Farmers Ins. Exchange* v. *Adams* (1985) 170 Cal.App.3d 712 [216 Cal.Rptr. 287] [insured risks contributed to property damages as well as excluded events under homeowners' policies].)

Judgment reversed.

Kremer, P. J., concurred.

Work, J., concurred in the result.

Respondents' petition for review by the Supreme Court was denied August 20, 1987. Broussard, J., was of the opinion that the petition should be granted.